UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DE LE LIU,

                              Petitioner,

        -against-

KENNETH GENALO, Field Office Director of
New York Immigration and Customs
Enforcement; TODD LYONS, Acting Director of
Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary of the U.S.
Department of Homeland Security; TODD
BLANCHE, Acting Attorney General of the
United States,

                              Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   5/18/2026

26 Civ. 3720 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, De Le Liu, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") on May 5, 2026. *See generally* Pet. (the "Petition"), ECF No. 1. Prior to that date, Liu, who is subject to a final order of removal, had been at liberty pursuant to a 2010 order of supervision ("OSUP"). *See id.* ¶¶ 1–2; OSUP, ECF No. 9-4. Liu contends that his redetention violates his Fifth Amendment right to due process and seeks immediate release. Pet. at 10–11. For the reasons stated below, the Petition is GRANTED.

**BACKGROUND**

Over 25 years ago, in September 2000, Liu, a native of China, entered the United States without valid entry documents. Rousseau Decl. ¶¶ 3, 4, ECF No. 8. One month later, ICE served him with a Notice to Appear ("NTA"), and in March 2001, an immigration judge ordered him removed *in absentia* after he failed to appear at a master calendar hearing. *Id.* ¶¶ 7–13. About ten years later, during an unrelated investigation into a restaurant in Connecticut, ICE agents

discovered that Liu was subject to a final order of removal and detained him.  *Id.* ¶ 18.  On or about November 26, 2010, after Liu had spent 90 days in custody, ICE released him on an OSUP because, according to the government, ICE could not secure a travel document from China to effectuate his removal.  *Id.* ¶¶ 20–21.  Since then, for 15 years, Liu has reported consistently to ICE in accordance with the terms of his supervision.  *Id.* ¶ 22.

On April 15, 2026, Liu was arrested for petit larceny and possession of stolen property in New York City.  *Id.* ¶ 29.  ICE subsequently mailed Liu a Form G-56 directing him to report in person to 26 Federal Plaza on May 5, 2026.  *Id.* ¶¶ 31–32.  On that date, a "Detention and Deportation Officer" concluded, based on Liu's April 15 arrest, that he had violated a condition of his OSUP, revoked his release, and took him into custody.  *See id.* ¶ 32; Notice of Revocation at 1, ECF No. 9-5.  The Notice of Revocation states that Liu allegedly violated a term of his release because of his "arrest" and that "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future."  Notice of Revocation at 1.  Later that day, during processing, ICE afforded Liu an informal interview to allow him to respond to the reasons for revoking his OSUP.  *See* Rousseau Decl. ¶ 32; Interview Notes, ECF No. 9-6. According to ICE's interview notes, Liu made no oral or written statement.  *See* Interview Notes (showing a blank space where the officer is to fill in the detained person's oral statement).

ICE does not currently possess valid travel documents for Liu.  Gov't Ltr. I at 2, ECF No. 6. On May 8, ICE submitted a travel document request to China.  *See* Rousseau Decl. ¶ 34.  Dmitry Rousseau, an ICE "Deportation Officer," states that since January 2025, China "has issued travel documents to its nationals who are in the United States" and does so "upon an individual's nationality being verified by the China National Immigration Administration."  *Id.* ¶ 35.  He

2

represents that the "turnaround time for verification of an individual's nationality varies . . . [and] can generally range from 30 days to several months." *Id.*

## DISCUSSION

I.      Legal Framework

"[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Id.* "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.*

Liu is detained pursuant to 8 U.S.C. § 1231. *See* Gov't Ltr. I at 1. Section 1231 provides that during a 90-day "removal period," "the Attorney General shall detain" the noncitizen. *Id.* § 1231(a)(1)(A), (a)(2)(A). If the person is not removed during that 90-day removal period, the person "pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). However, certain noncitizens—including inadmissible noncitizens—"may" continue to be detained beyond the 90-day removal period. *Id.* § 1231(a)(6). Because there is no dispute that the 90-day removal period has long passed, *see id.* § 1231(a)(1)(B)(iii); Rousseau Decl. ¶¶ 17, 20, Liu's current detention is discretionary under § 1231(a)(6).

The government's detention authority under § 1231(a)(6) is, however, constrained by its own procedures. *See Funes v. Francis*, 810 F. Supp. 3d 472, 499 (S.D.N.Y. 2025); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent

upon agencies to follow their own procedures.  This is so even where the internal procedures are possibly more rigorous than otherwise would be required."); *Singh v. U.S. Dep't of Just.*, 461 F.3d 290, 296 (2d Cir. 2006).  "Two regulations control the [g]overnment's procedures for granting or revoking supervised release under [§] 1231(a)(6)":  8 C.F.R. § 241.4 and § 241.13.  *E.M.M. v. Almodovar*, No. 25 Civ. 8212, 2025 WL 3077995, at *3 (S.D.N.Y. Nov. 4, 2025).

Section 241.4 governs ICE's authority to continue detaining a person beyond the 90-day removal period, including its authority to issue and revoke a person's OSUP.  *See* § 241.4(a), (*l*).  Under § 241.4(*l*), a person whose OSUP is revoked is "entitled to notice of the reasons for the revocation of [his] release and an informal interview promptly after . . . [his] return to custody that afford[s] [him] an opportunity to respond to the reasons for revocation stated in the notification." *Funes*, 810 F. Supp. 3d at 493 (cleaned up); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 409–15 (S.D.N.Y. 2025); *see* § 241.4(*l*)(1).  Section 241.4(*l*)(2) "identifies by title the officials who have the discretion to revoke release and the circumstances when such discretion can be exercised." *Funes*, 810 F. Supp. 3d at 489; *see* § 241.4(*l*)(2).[1]  Specifically, the authority to revoke an OSUP under § 241.4 lies in the "Executive Associate Commissioner," *id.* § 241.4(*l*)(2)—that is, the "Executive Associate Director of [ICE]," *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 159–60 (W.D.N.Y. 2025) (citing 8 C.F.R. § 1.2).  Alternatively, a "district director" or "field office directors and any other official 'delegated the function or authority . . . for a particular geographic district, region, or area,'" *id.* at 161 (quoting § 1.2), may revoke an OSUP, but only if they find that "revocation is

---

[1] The government does not argue that § 241.4(*l*)(1) and (2) describe two separate processes for revoking release. Nor does the Court find this argument would be persuasive.  The Court agrees with other courts in this Circuit that "paragraph (*l*) sets forth a unified set of procedures for the revocation of removal" under § 241.4.  *Zhu*, 798 F. Supp. 3d at 410; *see Funes*, 810 F. Supp. 3d at 490–92; *Zhang v. Genalo*, 814 F. Supp. 3d 307, 323 (E.D.N.Y. 2025); *Ndoye v. Joyce*, No. 25 Civ. 8856, 2026 WL 306387, at *5 (S.D.N.Y. Feb. 5, 2026).

in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner," *id.* at 160, 162 (quoting § 241.4(*l*)(2)).

Section 241.13 also governs ICE's authority to continue detaining a person beyond the 90-day removal period.  Unlike § 241.4, however, it involves "special review procedures" that are triggered when, at the end of the removal period, a noncitizen provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.  *See* 8 C.F.R. § 241.13(a).  These procedures begin once the noncitizen "submits a written request providing reasons why there is no significant likelihood the [g]overnment will remove him or her" and conclude after ICE's Headquarters Post-Order Detention Unit ("HQPDU") conducts a "formal review" and issues a "written decision" regarding the likelihood of removal in the reasonably foreseeable future.  *E.M.M.*, 2025 WL 3077995, at *3 (citing § 241.13(d)–(h)).  Importantly, § 241.13 states that § 241.4 "shall continue to govern [a noncitizen's detention] . . . unless the Service makes a determination *under this section* that there is no significant likelihood of removal in the reasonably foreseeable future."  § 241.13(b)(1) (emphasis added).  In other words, detention decisions, like issuing an OSUP, are made pursuant to § 241.13 only when "special review procedures" are employed—that is, when the detained person makes a written request and initial showing, the HQPDU conducts a formal review, and the HQPDU issues a written decision regarding the likelihood of removal.  *E.M.M.*, 2025 WL 3077995, at *3–4.  As for revocation and redetention, courts in this Circuit and others have held that the government may rely on § 241.13(i) to revoke an OSUP only if the OSUP was issued under § 241.13 to begin with.  *See id.* at *5; *Mohammad v. Kurzdorfer*, No. 26 Civ. 132, 2026 WL 657460, at *4–5 (W.D.N.Y. Mar. 9, 2026); *see also Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017); *Grigorian v. Bondi*, No. 25 Civ. 22914, 2025 WL 2604573, at *5 (S.D. Fla. Sep. 9, 2025).

In addition to the government's own regulations, the Fifth Amendment Due Process Clause limits the government's detention authority under § 1231(a)(6), permitting detention only for "a period reasonably necessary to secure removal." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. Furthermore, even if release is not required, a petitioner may be entitled to a bond hearing if his detention is unconstitutionally prolonged. Although there is no statutory obligation to provide a bond hearing for detentions based on § 1231(a)(6), the Supreme Court has left open the question of whether constitutional due process may require a bond hearing for detention under that provision in certain circumstances. *See Lu v. Genalo*, 817 F. Supp. 3d 176, 181–82, 184 (S.D.N.Y. 2025); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 583 (2022) (leaving for "lower courts" the question of whether and when a bond hearing is constitutionally required for detentions under § 1231(a)(6)).

II.    Analysis

A.  Whether § 241.4 or § 241.13 Governs

The government argues that Liu's OSUP was issued and revoked under 8 C.F.R. § 241.13. *See* Opp. at 10–12; Rousseau Decl. ¶ 21. Although the Notice of Revocation states that the revocation was carried out under this section, *see* Notice of Revocation at 1, based on the text of § 241.13 and the record as a whole, the Court finds the government issued Liu's OSUP under § 241.4, not § 241.13, and that the government must, therefore, rely on § 241.4, not § 241.13, to revoke it. *See E.M.M.*, 2025 WL 3077995, at *4.

Section 241.13 is limited in scope. An OSUP is issued under § 241.13 only when it is issued pursuant to the detailed "special review procedures" described in that section. *See, e.g.*, *E.M.M.*, 2025 WL 3077995, at *4; *Mohammad*, 2026 WL 657460, at *4–5; *Rombot*, 296 F. Supp.

6

3d at 386–87.  Nothing in the record shows, nor does the government state, that these specific review procedures were in fact employed.  There is no evidence that Liu submitted a "written request" for review or made an initial showing regarding the likelihood of his removal to China—a necessary first step.  *E.M.M.*, 2025 WL 3077995, at *3; § 241.13(d)(1); *see also* Rousseau Decl. ¶ 21.  Nor is there any evidence that the HQDPU conducted a "formal review" or issued a "written decision."  *See E.M.M.*, 2025 WL 3077995, at *3.  Where the "special review procedures" have not been followed, § 241.4 remains the default provision governing those detained or released after the 90-day removal period.  *See id.* at *5–6 (holding § 241.13 did not apply, but § 241.4 did, because there was no evidence in the record that procedures described in § 241.13(d)(1), (e), (f), (h) were employed).  Furthermore, as in *E.M.M.*, nothing in the OSUP suggests it was issued under § 241.13, rather than as part of the ordinary course under § 241.4.  *See E.M.M.*, 2025 WL 3077995, at *5.  The OSUP merely states that Liu was being released because ICE had "not effected [Liu's] deportation or removal during the period prescribed by law."  OSUP at 1.  Because the Court finds that the OSUP was not issued pursuant to § 241.13's "special review procedures," § 241.4 governs.

Finally, the government cannot retroactively alter the basis of Liu's OSUP.  The only indication that § 241.13 was involved is the government's post hoc assertion over 15 years later.  *See* Rousseau ¶ 21; Notice of Revocation at 1.  "[I]f ICE did not follow [the special review procedures] when issuing an [OSUP], it cannot later try to correct that deficiency simply by stating in its notice of revocation that [§] 241.13 governs re-detention by fiat.  Indeed, that would be nothing more than an ad hoc rationalization of why the [OSUP] was issued in the first place."  *Mohammad*, 2026 WL 657460, at *4.  Because the record indicates that the "special review procedures" were not followed, the Court holds that Liu's OSUP was issued under § 241.4.  Therefore, any revocation must be made in accordance with the procedures described in that

7

section. *See id.* at \*5 ("Unless ICE follows [§] 241.13's 'special review procedures' when issuing an [OSUP], a noncitizen's detention—and therefore re-detention—is governed by 8 C.F.R. § 241.4.").

  B. Failure to Comply with Procedures Under § 241.4(*l*)(2)

  Liu's Notice of Revocation was not "signed by an official with authority to do so" under § 241.4. *Funes*, 810 F. Supp. 3d at 495. As a result, the government revoked his OSUP without due process, and his release from custody is required. *See E.M.M.*, 2025 WL 3077995, at \*6.

  Liu's Notice of Revocation is signed by "Deportation and Detention Officer" Kevin J. Brown, Jr. *See* Notice of Revocation at 1. A "Deportation and Detention Officer" "is not the Executive Associate Director of ICE or a district director, and there is no delegation order giving [Brown] the authority to revoke release." *Mohammad*, 2026 WL 657460, at \*6. Even if Brown were a district director, "there is no evidence that [he] made the findings that a district director is required to make before revoking [Liu's] release," and even if there were a delegation order, "there is no caselaw supporting the validity of such a delegation order." *Ceesay*, 781 F. Supp. 3d at 162. Indeed, several courts in this Circuit have held that even an "assistant field office director" lacks the authority under § 241(*l*)(2) to revoke an OSUP. *See, e.g.*, *id.* at 161–62; *E.M.M.* 2025 WL 3077995, at \*6; *Funes*, 810 F. Supp. 3d at 495–96; *Zhang v. Genalo*, 814 F. Supp. 3d 307, 321–22, 330 (E.D.N.Y. 2025); *Lim v. Arteta*, No. 26 Civ. 461, 2026 WL 192490, at \*3 (S.D.N.Y. Jan. 26, 2026); *see also Mohammad*, 2026 WL 657460 at \*6 (applying this holding to a "Supervisory Detention and Deportation Officer").

  Notably, the government does not claim that a "Deportation and Detention Officer" may validly revoke an OSUP under § 241(*l*)(2). It argues only that Liu's OSUP was issued pursuant to § 241.13, not § 241.4. *See* Opp. 11 n.3. The Court has already rejected this argument based on

the record evidence. "Because [Brown's] approval of the revocation was *ultra vires*, the revocation of [Liu's] OSUP was void as unauthorized." *Funes*, 810 F. Supp. 3d at 496.

In sum, Liu's OSUP was not validly revoked, and his detention violates due process. *See E.M.M.*, 2025 WL 3077995, at *6; *Zhang*, 2025 WL 3733542, at *15 ("[R]elease would be the appropriate remedy given the Court's finding that ICE did not follow its own regulations when revoking [a petitioner's] liberty."); *Lim*, 2026 WL 192490, at *5–6; *Roman-Cruz v. Lyons*, No. 25 Civ. 10522, 2026 WL 114936, at *3 (S.D.N.Y. Jan. 15, 2026); *see also Ndoye v. Joyce*, No. 25 Civ. 8856, 2026 WL 306387, at *8–9 (S.D.N.Y. Feb. 5, 2026) (explaining that where regulations, like § 241.4(*l*), are promulgated to protect a fundamental right, a failure to follow regulations raises a constitutional issue). Accordingly, Liu's release from custody is required.[2]

## CONCLUSION

For the foregoing reasons, the Petition is GRANTED. By **May 19, 2026**, at **12:00 p.m.**, the government shall release Liu from custody. By **May 19, 2026**, at **5:00 p.m.**, the government shall certify compliance with this order.

SO ORDERED.

Dated: May 18, 2026
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[2] Because the Court holds that the government violated certain required procedures when revoking Liu's OSUP, the Court does not address Liu's claim that there is no significant likelihood of removal in the reasonably foreseeable future under *Zadvydas*, 533 U.S. 678.

9